RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0134p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

QUINCY DENNIS,

*Petitioner-Appellant,*

*v.*

J.A. TERRIS, Warden,

*Respondent-Appellee.*

No. 18-2081

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:17-cv-14087—Victoria A. Roberts, District Judge.

Decided and Filed: June 21, 2019

Before: ROGERS, SUTTON, and READLER, Circuit Judges.

---

## COUNSEL

**ON BRIEF:** Quincy Dennis, Milan, Michigan, pro se. Shane Cralle, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

---

## OPINION

---

SUTTON, Circuit Judge. The President has the "Power to grant Reprieves and Pardons for Offences against the United States." U.S. Const. art. II, § 2, cl. 1. But does the President's exercise of that authority invariably create a new executive judgment that fully replaces the judicial judgment?

Quincy Dennis committed a string of drug offenses, leading to a mandatory life sentence in 1997. In 2017, President Obama commuted his sentence to 30 years. Dennis filed this § 2241

habeas petition, arguing that he should have faced only a 20-year mandatory sentence. The district court held that it had no authority to question the commuted sentence and dismissed the petition as moot. Because the commutation did not alter the reality that Dennis continues to serve a judicial sentence and because he could obtain a sentence of fewer than 30 years if he obtained the requested relief, the petition is not moot. Even so, the petition lacks merit, and accordingly we deny it.

In 1997, a jury convicted Dennis of three federal drug crimes: attempting to distribute cocaine base, possessing cocaine base with intent to distribute it, and possessing cocaine with intent to distribute it. Before trial, the government alerted Dennis that it might seek a sentencing enhancement. 21 U.S.C. § 851. That put Dennis on notice that, if convicted, he faced a mandatory life sentence based on two prior Ohio drug convictions.

That's what happened. After the jury found Dennis guilty, the district court sentenced him to life in prison on the cocaine base convictions and a concurrent 30-year term on the cocaine offense.

Dennis sought collateral relief from the courts on several fronts. Each failed. Then Dennis received a different form of relief. President Obama conditionally commuted Dennis's sentence to a term of 30 years. To receive this benefit, Dennis had to enroll in a residential drug abuse program and return a signed acceptance of the commutation. Dennis honored his end of the bargain.

Convinced that a lingering error marred his original sentence, Dennis filed a § 2241 habeas petition in December 2017. One of his Ohio convictions, he maintains, does not count as a felony under the recidivism enhancement. If true, he points out, he would have received a 20-year mandatory minimum sentence, not a mandatory life sentence. The district court dismissed Dennis's petition as moot on two grounds: that it had no authority to alter the commuted sentence and that Dennis now serves a commuted executive sentence, not the original judicial sentence.

At issue is the interaction of an executive branch power (to pardon individuals convicted of crimes) with a limitation on a judicial branch power (to resolve only live cases or controversies).

Begin with the Article II pardon power. The Constitution says that the President "shall have Power to grant Reprieves and Pardons for Offences against the United States, except in Cases of Impeachment." U.S. Const. art. II, § 2, cl. 1. The Framers modeled this provision on the pardon power of the English Crown. *Schick v. Reed*, 419 U.S. 256, 260–64 (1974). That English practice thus illuminates "the operation and effect of a pardon," making the one a helpful lantern in seeing the other. *United States v. Wilson*, 32 U.S. (7 Pet.) 150, 160 (1833) (Marshall, C.J.). As an act of executive mercy, *id.*; *see* 4 William Blackstone, *Commentaries* *389–90, the pardon power includes the authority to commute sentences in whole or in part, *Schick*, 419 U.S. at 260. The President may place conditions on a pardon or commutation. *Ex parte Wells*, 59 U.S. (18 How.) 307, 314–15 (1855). The only potential limits on the President's pardon power are constitutional in nature, and even those are little defined. *Schick*, 419 U.S. at 267; *see Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 279–85 (1998) (opinion of Rehnquist, C.J.).

Turn to Article III, which empowers and constrains the judicial branch. It vests "[t]he judicial Power of the United States" in the Supreme Court and any inferior federal courts that Congress creates. U.S. Const. art. III, § 1. One such power is to try crimes and sentence defendants. *See Ex parte Milligan*, 71 U.S. (4 Wall.) 2, 121 (1866). What the Constitution gives, however, it sometimes takes away. Courts may resolve only "Cases" or "Controversies." U.S. Const. art. III, § 2, cl. 1. That means we need a live cause—a conflict in which we are able to give a remedy to the winner—in order to exercise jurisdiction. *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307–08 (2012). A moot dispute is not a live dispute. *Id.*

These principles bring the problem into focus. Two questions arise. Does a presidential commutation do away with a judicial sentence, leaving the recipient bound only by an executive sentence? Or does a commutation merely limit the execution of the judicial sentence?

Generally speaking, a prisoner who receives a presidential commutation continues to be bound by a judicial sentence. *See Duehay v. Thompson*, 223 F. 305, 307–08 (9th Cir. 1915); *see*

*also United States v. Buenrostro*, 895 F.3d 1160, 1164–66 (9th Cir. 2018); *Hagelberger v. United States*, 445 F.2d 279, 280 (5th Cir. 1971) (per curiam).  The commutation changes only how the sentence is carried out by switching out a greater punishment for a lesser one.  *See Biddle v. Perovich*, 274 U.S. 480, 487 (1927); *Ex parte Wells*, 59 U.S. at 315.

"The judicial power and the executive power over sentences are readily distinguishable." *United States v. Benz*, 282 U.S. 304, 311 (1931).  "To render judgment is a judicial function.  To carry the judgment into effect is an executive function."  *Id.*  A President's commutation "abridges the enforcement of the judgment, but does not alter it qua judgment."  *Id.*; *see Nixon v. United States*, 506 U.S. 224, 232 (1993).  Blackstone agreed.  "[F]alsifying or reversing the judgment" would "set [it] aside."  4 Blackstone, *Commentaries* *383.  "The only other remaining ways of avoiding the *execution* of the judgment," he said, "are by a reprieve, or a pardon."  *Id.* at *387 (emphasis added).

The existence of conditional commutations, as President Obama used in Dennis's case, also supports our jurisdiction.  Say the President commuted a life sentence to 25 years but conditioned the commutation on the prisoner maintaining good behavior in prison.  If, five years later, the prisoner stabbed a fellow inmate, he would violate the condition, undo the commutation, and absent more executive grace be subject once again to life imprisonment under the sentence.  *See Vitale v. Hunter*, 206 F.2d 826, 829 (10th Cir. 1953).  The judgment remains in place, ready to kick into full effect if the recipient violates the conditional cap.

The possibility of unconditional commutations also supports this view.  Keep in mind that such actions do not require the recipient's consent.  *Biddle*, 274 U.S. at 486–88.  Anyone who takes the position that executive pardons or commutations necessarily eliminate the judicial sentence must account for this reality.  It would mean that a mischievous chief executive could interfere with an inmate's efforts to obtain deserved relief in court.  Suppose the President didn't like a Supreme Court decision that would result in some prisoners receiving lower sentences on collateral review (e.g., *Johnson v. United States*, 135 S. Ct. 2551 (2015)).  Is it really the case that the President could unconditionally commute each of those prisoners' sentences by a day and thereby deny them any judicial relief from their unconstitutional sentences?  We don't think so.

All of this means that Dennis may challenge his original sentence because, if he wins, the district court might sentence him to a term less than his current 30-year commuted sentence. *See United States v. Surratt*, 855 F.3d 218, 226–27 (4th Cir. 2017) (en banc) (mem.) (Wynn, J., dissenting); *cf. Madej v. Briley*, 371 F.3d 898, 899 (7th Cir. 2004) (Easterbrook, J.) (holding that a governor's commutation did not moot a state prisoner's habeas petition seeking resentencing because his new sentence could be less than his commuted sentence). The possibility that his sentence might be reduced suffices to give Dennis a concrete interest in this dispute, making it non-moot. *See Knox*, 567 U.S. at 307–08. We must go on.

In resisting this conclusion, the government invokes a concurring opinion by Judge Wilkinson. "Absent some constitutional infirmity in the commutation order," he thought, "we may not readjust or rescind what the President, in the exercise of his pardon power, has done." *Surratt*, 855 F.3d at 219 (Wilkinson, J., concurring). We agree, to an extent.

Courts may not alter a President's commutation, except perhaps if the commutation itself violates the Constitution. *Schick*, 419 U.S. at 264. So a court could not require a defendant to stay in prison for 40 years if the President commuted the sentence to 20 years. The executive branch, not the judicial branch, executes the sentence, and the President retains authority, constitutional authority, to lower it or end it or eliminate the conviction altogether. For like reasons, courts may not disregard the conditions the President places on a commutation. We thus could not excuse Dennis from signing up for the drug rehab program, a presidential condition for his commutation. When a would-be recipient accepts a conditional commutation, "he cannot complain if the law executes the choice he has made." *Ex parte Wells*, 59 U.S. at 315. Instead, the recourse for changing a commutation is to "apply to the present President or future Presidents" for more relief. *Schick*, 419 U.S. at 268.

Yet this does not mean that the altered sentence becomes an executive sentence in full, free from judicial scrutiny with respect to mistakes *the courts* may have made. The President may not issue judgments in a criminal case with respect to a private citizen. *See Ex parte Milligan*, 71 U.S. at 121–22. His role instead is to carry out the sentence of a court. *Benz*, 282 U.S. at 311.

This all squares with the Supreme Court's decision in *Schick v. Reed*, 419 U.S. 256 (1974). A court-martial convicted Schick, a master sergeant in the Army, of murder and sentenced him to death. President Eisenhower, who was required to approve the court-martial's sentence before it could be executed, 10 U.S.C. § 871(a) (1960), commuted Schick's executive-imposed sentence to life imprisonment on the condition that he never be eligible for parole. *Schick*, 419 U.S. at 258. Later, the Supreme Court held that the death penalty was unconstitutional. *Furman v. Georgia*, 408 U.S. 238, 239–40 (1972) (per curiam). That meant that, if the President hadn't conditionally commuted the sentence (and Schick had not already been executed), Schick would have been entitled to a new sentence of life imprisonment with the possibility of parole. *Schick*, 419 U.S. at 258–59. Schick filed suit to undo the no-parole condition. The Supreme Court said it was powerless to change that unquestionably constitutional condition. Schick's quarrel (and therefore his avenue for potential recourse) was with the President. *Id.* at 266–67.

That case differs from this one. It dealt with a court-martial's sentence in a military case that required the President's approval. It dealt with an executive-imposed sentence in the first instance because that is how courts-martial work. *See Ortiz v. United States*, 138 S. Ct. 2165, 2174–77 (2018); *id.* at 2198–99 (Alito, J., dissenting). And Dennis, unlike Schick, does not challenge a condition that the President placed on his commutation. He instead challenges the underlying sentence itself, alleging that the courts dropped the ball. One other thing: The Court denied Schick's petition on the merits rather than dismissing it for lack of jurisdiction.

The government places considerable weight on the notion that a commutation is a "substituted punishment." *Biddle*, 274 U.S. at 487. Practically speaking, that is true. Dennis now will serve at most 30 years in prison, not life. But for now he still serves a judicial life sentence, the *execution* of which the President's act of grace has softened. The original judicial sentence remains intact. *Duehay*, 223 F. at 307–08; *see Benz*, 282 U.S. at 311. And we have authority, just as we do in any other criminal case, to entertain a collateral attack on that sentence—and even act on it if it lowers the sentence below 30 years or (in another case) eliminates the conviction altogether.

But no, the government persists, Dennis agreed to the conditional commutation. Making an argument with hints of waiver, it asserts that Dennis cannot now try to undo or undermine the commutation. True again. But true again just in part. We could not change the commutation to a 25-year cap. Nor could we alter the drug program condition. But give Dennis credit. He does not challenge the commutation order. He challenges the underlying sentence. In accepting his commutation, Dennis did not give up any rights to attack his sentence collaterally. He met the two conditions the President imposed. And the President did not add any others, such as a requirement that he abandon further attacks on the original conviction or sentence.

We recognize that this decision is in some tension with a recent Fourth Circuit en banc order dismissing a habeas petition as moot after a presidential commutation. *Surratt*, 855 F.3d at 219. But "some tension" is the operative phrase. It's not easy to discern why the Fourth Circuit did what it did. The court's order is two sentences long and provides no analysis. There is one reasoned opinion going one way and one reasoned opinion going the other way. No other members of the court joined either opinion.

All of this is not to say that a presidential pardon or commutation might not moot some cases. *See, e.g.*, *United States v. Schaffer*, 240 F.3d 35, 37–38 (D.C. Cir. 2001). That may happen sometimes: say a sentencing commutation that releases an individual challenging only his sentence. Just not this time.

The merits of Dennis's petition contain little drama. He argues that he is entitled to relief under § 2241 because one of his state convictions does not qualify as a "felony drug offense." 21 U.S.C. § 841(b)(1)(A). Even assuming Dennis may seek relief under § 2241 for this kind of problem, we disagree.

At the time of Dennis's federal conviction, § 841(b)(1)(A) required life imprisonment for anyone who violated that subsection "after two or more prior convictions for a felony drug offense have become final." 21 U.S.C. § 841(b)(1)(A) (1997). Then as now, the law defined a "felony drug offense" as "an offense that is punishable by imprisonment for more than one year" under any state or federal drug law. *Id.* § 802(44); *see Burgess v. United States*, 553 U.S. 124, 126–27 (2008). Ohio sentenced Dennis to more than one year of imprisonment for both of his

1995 drug convictions, and both qualify as felony drug offenses for purposes of the sentencing enhancement, *Burgess*, 553 U.S. at 126–27.

Dennis insists that one of his convictions was for "simple possession," making it the equivalent of a federal misdemeanor. R. 1 at 17. But labels, like titles, often are overrated. His prior conviction was for a drug crime, and Ohio law allowed more than a year of punishment for that crime. *See United States v. Lockett*, 359 F. App'x 598, 606 (6th Cir. 2009). That's all that matters.

Dennis adds that § 802(44) suffers from a due process problem: vagueness. Not so, as many courts have already held. *See, e.g.*, *United States v. Calhoun*, 106 F.3d 397 (5th Cir. 1997) (per curiam) (unpublished); *United States v. Mincoff*, 574 F.3d 1186, 1201 (9th Cir. 2009). The statute provides sufficient notice of the conduct triggering the enhancement: any drug conviction punishable for more than a year. That creates a neat, bright line in contrast to the residual clause of the career offender statute. *See Johnson*, 135 S. Ct. at 2563. The residual clause called for courts to measure whether the potential risk of harm involved in committing a crime hit an undefined threshold. *Id.* at 2557–60. This statute sets us on no such endeavor, not even remotely, here.

We deny Dennis's petition on the merits.