[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-12443

_____

D.C. Docket No. 2:17-cv-00105-LGW-BWC

ORASAMA ANDREWS,

Plaintiff-Appellant

versus

WARDEN,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(May 5, 2020)

Before WILLIAM PRYOR, JILL PRYOR, and LUCK, Circuit Judges.

WILLIAM PRYOR, Circuit Judge:

This appeal requires us to interpret an executive grant of clemency that President Barack Obama issued to Orasama Andrews. In 2003, Andrews was sentenced to a term of 37 months of imprisonment followed by a term of supervised released for distributing crack cocaine. After serving the 37-month term of imprisonment, and while on supervised release, Andrews was again charged with distributing crack cocaine. For that new offense, the district court sentenced Andrews to imprisonment for life. The district court also revoked Andrews's supervised release and imposed a consecutive term of 24 months of imprisonment. Andrews later applied to President Obama for clemency for his second crack-cocaine conviction, and the President "commute[d] the total sentence of imprisonment" that Andrews was "now serving to a term of 188 months' imprisonment." The Bureau of Prisons recalculated Andrews's release date and determined that he was then serving both the life term and the 24-month term, so it apportioned the 188 months between the two terms accordingly—164 months and 24 months—and credited Andrews for the time served in prison on these terms. Andrews then filed a petition for a writ of habeas corpus, 28 U.S.C. § 2241, and alleged that President Obama commuted his "total sentence" of imprisonment, which included the 37 months of imprisonment that he served as part of his 2003 sentence. Andrews argued that the Bureau should have credited him with time spent in prison for the life term, the 24-month term, and the 37-month term, which

2

yields an earlier release date than the date the Bureau calculated. The district court disagreed and denied the petition. We affirm that denial.

## I.    BACKGROUND

In 2003, Andrews pleaded guilty to one count of distributing crack cocaine and received a sentence of 37 months of imprisonment, three years of supervised release, and a $100 penalty. *See* 21 U.S.C. § 841(a)(1), (b)(1)(C) (2000 & Supp. 2003). While on supervised release, Andrews returned to drug dealing and was convicted of one count of distributing five grams or more of crack cocaine and one count of distributing 50 grams or more of crack cocaine. *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii), (b)(1)(B)(iii), 851(a) (2006 & Supp. 2009). So in 2009, a Georgia district court sentenced Andrews to concurrent terms of life imprisonment, ten years of supervised release, and a $200 penalty. Because Andrews's new conviction violated the conditions of his supervised release, the district court then revoked the term of supervised release and imposed a term of 24 months of imprisonment to run consecutively to his life term. That is, the district court ordered the 24-month term of imprisonment to commence after completion of the life term.

Andrews later applied to President Obama for clemency. He completed the standard petition for commutation created by the Office of the Pardon Attorney within the Department of Justice. *See* 28 C.F.R. § 1.1; Fed. Bureau of Prisons, U.S.

Dep't of Justice, Program Statement No. 1330.15, Subject: Commutation of Sentence, Petition for (2001). That petition required the applicant to list the "Offense(s) For Which Commutation Is Sought." Andrews listed and described only the new crack-cocaine offenses—the offenses he committed while on supervised release.

President Obama signed an executive grant of clemency for Andrews and 28 other federal prisoners on December 19, 2016. For Andrews and two other prisoners, President Obama reduced their sentences of imprisonment to 188 months of imprisonment:

> I hereby further commute the total sentence of imprisonment each of the following named persons is now serving to a term of 188 months' imprisonment, leaving intact and in effect for each named person the term of supervised release imposed by the court with all its conditions and all other components of each respective sentence. I also direct the Bureau of Prisons to make available to each named person the Residential Drug Abuse Program (RDAP), or future equivalent program, at an appropriate time before each person's sentence expires. Further, I condition the grant of commutation to each of the following named persons on that person enrolling in the RDAP program by written agreement, as evidenced by that person's signing, within 14 days of that person's receipt of a certified copy of this document, a receipt verifying his or her acceptance of the commutation granted with all of its conditions, including enrollment in RDAP.

The commutation order became effective "only upon" Andrews's signed acceptance. President Obama "further direct[ed] . . . the Office of the Pardon Attorney [to] deliver [a signed] copy to appropriate personnel in the Bureau of

4

Prisons Designation and Sentence Computation Center, who will recalculate [Andrews's] projected release date[.]"

The President's grant of clemency and a description of it is publicly available on the website of the office of the United States Pardon Attorney. *See* Office of the Pardon Att'y, *Commutations Granted by President Obama (2009–2017)*, U.S. Dep't of Justice (last updated July 11, 2018), https://www.justice.gov/pardon/obama-commutations##DEC192016. The website describes Andrews's commuted offenses as the two counts supporting the second cocaine conviction and the "[s]upervised release violation." *Id.* And it lists his sentence for these offenses as "Life Imprisonment" and "24 months' imprisonment (consecutive)." *Id.*

After Andrews signed and accepted the commutation order, the Computation Center used its standard policies to calculate Andrews's release date. When a prisoner is serving multiple sentences, the Computation Center treats, "for administrative purposes," all the sentences "as a single, aggregate term of imprisonment." 18 U.S.C. § 3584(c); *see also* Fed. Bureau of Prisons, U.S. Dep't of Justice, Program Statement No. 5880.28, Subject: Sentence Computation Manual (CCA of 1984), at 11–12 (1999). At the time of the commutation order, Andrews had two uncompleted terms of imprisonment, the life term and the 24-month term. So the Computation Center divided Andrews's commuted sentence of

5

188 months of imprisonment between these terms, reducing the life term to 164 months and retaining the 24-month term. That calculation yielded a projected release date of June 16, 2022.

The Computation Center did not credit Andrews with the 37 months he served on the 2003 sentence before he violated his supervised release. The Computation Center viewed the 37-month term and the later 24-month term as separate terms of imprisonment arising from the same conviction. It concluded that the commutation order did not reach the 37-month term because Andrews had completed that term of imprisonment before President Obama issued the commutation order.

Andrews disagreed with this calculation and filed a petition for a writ of habeas corpus, 28 U.S.C. § 2241, to challenge it. He argued that the Computation Center should have credited him for the 37 months served on the 2003 sentence. After holding a hearing, the district court denied the petition. It explained that, although the 24-month term of imprisonment was part of the original 2003 sentence, Andrews "was 'now serving' a new and separate term of imprisonment" distinct from the 37-month term of imprisonment.

## II.   STANDARD OF REVIEW

When reviewing the denial of a petition for a writ of habeas corpus, we review *de novo* questions of law and for clear error factual findings. *Coloma v.*

*Holder*, 445 F.3d 1282, 1284 (11th Cir. 2006). "We may affirm for any reason supported by the record." *United States v. Bane*, 948 F.3d 1290, 1294 (11th Cir. 2020) (alteration adopted) (internal quotation marks omitted).

## III.   DISCUSSION

Andrews contends that the Bureau should include the 37-month term of imprisonment that he served on his first sentence in its recalculation of his release date, but we disagree. Based on the terms of the commutation order, the Constitution, and Supreme Court precedent, we cannot say that the Bureau erred in excluding the 37-month term of imprisonment from its recalculation.

The Constitution grants the Executive the "Power to grant Reprieves and Pardons for Offences against the United States." U.S. Const. art. II § 2, cl. 1. Because the greater power ordinarily includes the lesser power, the President's pardon power includes the authority to commute a sentence to a lesser punishment. *See Schick v. Reed*, 419 U.S. 256, 265–66 (1974); *Biddle v. Perovich*, 274 U.S. 480, 486–87 (1927). The Framers vested this power in the President because it is part and parcel with the power to execute the laws and operates as a check on the other two branches. *See United States v. Wilson*, 32 U.S. (7 Pet.) 150, 160 (1833) ("A pardon is an act of grace, proceeding from the power entrusted with the execution of the laws . . . ."); *Ex parte Grossman*, 267 U.S. 87, 120–21 (1925) ("Executive clemency exists to afford relief from undue harshness or evident

7

mistake in the operation or enforcement of the criminal law. . . . It is a check entrusted to the executive for special cases."); Rachel E. Barkow, *Clemency and Presidential Administration of Criminal Law*, 90 N.Y.U. L. Rev. 802, 829–32, 836–40, 850 (2015). And, as Alexander Hamilton explained, vesting that power in "a single" individual naturally increases "the sense of responsibility" to ensure "mercy" is dispensed "scrupulous[ly] and cautio[usly]." *The Federalist No. 74*, at 385 (Alexander Hamilton) (George W. Carey & James McClellan eds., 2001).

The Constitution places few restrictions on the Executive's pardon power. It empowers the President to pardon only "Offences against the United States" and constrains the President from exercising the power "in Cases of Impeachment." U.S. Const. art. II § 2, cl. 1. Otherwise, the President possesses a "broad power" to "'forgive' the convicted person in part or entirely, to reduce a penalty in terms of a specified number of years, or to alter it with conditions." *Schick*, 419 U.S. at 266. So long as the President does not use the power to pardon to violate another provision of the Constitution, Congress and the Judiciary have no power to interfere with its exercise. *Id.* at 264, 266–67; *see also Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 276 (1998) ("[P]ardon and commutation decisions have not traditionally been the business of courts; as such, they are rarely, if ever, appropriate subjects for judicial review." (internal quotation marks omitted)).

8

The Constitution also vests in the Executive the power to execute the laws. *See* U.S. Const. art. II § 1, cl. 1; *id.* § 3; *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 587 (1952). To be sure, the Executive acts through subordinates in carrying out the law, whether by prosecuting its violations or effecting its punishments. For example, "[a]fter a district court sentences a federal offender, the Attorney General, through the [Bureau of Prisons], has the responsibility for administering the sentence." *United States v. Llewlyn*, 879 F.3d 1291, 1295 (11th Cir. 2018) (emphasis omitted) (internal quotation marks omitted). But the responsibility for effecting these powers and duties lies with the President. *The Federalist No. 70*, *supra*, at 362–63, 369 (Alexander Hamilton) ("Energy in the executive is . . . essential to the steady administration of the laws[.] . . . The ingredients which constitute energy in the executive [include] unity[.]").

In many ways, the pardon power represents the convergence of some of the Executive's various powers. When the President issues a commutation order for a judicially imposed sentence, he does not issue an "executive sentence," *Dennis v. Terris*, 927 F.3d 955, 959 (6th Cir. 2019), but instead "reduc[es] the terms of a sentence already imposed," *Hagelberger v. United States*, 445 F.2d 279, 280 (5th Cir. 1971); *see also Duehay v. Thompson*, 223 F. 305, 307 (9th Cir. 1915). "To cut short a sentence by an act of clemency is an exercise of executive power which abridges the *enforcement* of the judgment, but does not alter it *qua* judgment."

9

*United States v. Benz*, 282 U.S. 304, 311 (1931). So the commutation order affects only how the sentence will be carried out, and "carry[ing] the judgment into effect is an executive function." *Id.* In other words, the Executive commutes the sentence that it executes. And again, absent a violation of the Constitution, the commutation order is insulated from congressional and judicial interference. *See Schick*, 419 U.S. at 264, 266–67; *Dennis*, 927 F.3d at 959.

The President has long relied on executive officers to administer pardons. For some time after the ratification of the Constitution, the President used an informal process for pardons. *See* Barkow, *supra*, at 813. Although individuals often wrote directly to the President seeking mercy, the President also relied on the Secretary of State and Attorney General for review and advice. *See id.* at 813–14 & n.65; Margaret Colgate Love, *The Twilight of the Pardon Power*, 100 J. Crim. L. & Criminology 1169, 1175–76 (2010). In the late 1800s, the Attorney General became the main adviser to the President concerning the issuance of pardons when President Grover Cleveland "transferred authority to issue pardon warrants to the Justice Department by executive order." Love, *supra*, at 1176–80 & n.25; *see also* Joanna M. Huang, Note, *Correcting Mandatory Injustice: Judicial Recommendation of Executive Clemency*, 60 Duke L.J. 131, 143 n.66 (2010). Eventually, the Office of the Pardon Attorney was created within the Department of Justice and assumed responsibility for advising the President on clemency

petitions. *See* Office of the Pardon Att'y, *Frequently Asked Questions*, U.S. Dep't of Justice (last updated Dec. 14, 2019), https://www.justice.gov/pardon/frequently-asked-questions; Love, *supra*, at 1176–80. And that office continues to fill that role today. *See* Office of the Pardon Att'y, *Frequently Asked Questions*, *supra*; *see also* 28 C.F.R. §§ 1.1–1.11 (regulating the process of Executive Clemency).

Ordinarily, the President relies on the Department of Justice—specifically, the Attorney General and Office of the Pardon Attorney—to administer the pardon process. *See* Office of the Pardon Att'y, *Frequently Asked Questions*, *supra*; *see also* 28 C.F.R. §§ 1.1–1.11. Indeed, in his pardon of Andrews, President Obama "designate[d], direct[ed], and empower[ed] the Pardon Attorney, as [his] representative, to deliver to the Bureau of Prisons a certified copy of the [commutation order] . . . in order to carry into effect the terms of th[is] grant[] of clemency." And he committed the recalculation of Andrews's sentence to the Bureau of Prisons, another part of the Department of Justice. *See* Fed. Bureau of Prisons, Program Statement No. 1330.15, *supra*, at 5 ("If a petition for commutation of sentence is granted, institutional staff shall recalculate the inmate's sentence in accordance with the terms of the commutation order."). That decision makes sense because the Bureau executes sentences in the regular course of business on behalf of the President. *See Llewlyn*, 879 F.3d at 1295.

The Supreme Court has ruled that deference should be accorded to an executive agency's interpretation of an executive order it is charged with administering. *Udall v. Tallman*, 380 U.S. 1, 4, 16–18 (1965); *see also* Matthew Chou, *Agency Interpretations of Executive Orders*, 71 Admin. L. Rev. 555, 575–89 (2019) (exploring possible justifications for deferring to executive agency interpretations of executive orders). The Court explained that if an agency's "interpretation is not unreasonable" and "the language of the order[] bears [its] construction," "courts must . . . respect it." *Udall*, 380 U.S. at 4, 18. Although deference to agencies in other contexts engenders debate, *see, e.g.*, *Kisor v. Wilkie*, 139 S. Ct. 2400, 2425 (2019) (Gorsuch, J., concurring in the judgment), deference to an agency's interpretation is sensible in this context, where a court cannot even review a pardon that a recipient has not presented to it, *see Wilson*, 32 U.S. at 161–63 (explaining that "where the benefit [of a pardon] is to be obtained through the agency of the court, [the pardon] must be brought regularly to the notice of that tribunal").

The text of President Obama's commutation order governs our review. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 2, at 56 ("The words of a governing text are of paramount concern, and what they convey, in their context, is what the text means."); *cf. Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). We can neither enlarge nor cabin the commutation order;

12

we must evaluate only whether the commutation order supports the Bureau's calculation. *See Schick*, 419 U.S. at 264, 266–67; *Dennis*, 927 F.3d at 959.

Andrews argues that we should give no deference to the Bureau's interpretation, but even if we considered only the plain text of the commutation order, Andrews would not be entitled to relief. The text of the commutation order suggests that President Obama commuted only Andrews's term of life imprisonment. And the Bureau's more generous interpretation, which is entitled to deference, is reasonable.

President Obama "commute[d] the total sentence of imprisonment [Andrews] is *now serving* to a term of 188 months' imprisonment." "Now" means "at the present time or moment." *Now*, Merriam-Webster Online (last visited Apr. 27, 2020), https://www.merriam-webster.com/dictionary/now. So the text states that President Obama commuted only the sentence Andrews was serving when the commutation order issued. And Andrews was serving only one sentence at the time of the commutation order—his sentence for his second conviction. He was not serving *any* part of his original sentence when President Obama issued the commutation order. The term of imprisonment imposed for Andrews's violation of supervised release ran *consecutively* to the term of life imprisonment for his second conviction. *See Consecutive Sentences*, *Black's Law Dictionary* (11th ed. 2019) ("Two or more sentences of jail time to be served *in sequence*. . . . Also termed . . .

13

back-to-back sentences[.]" (emphasis added)); United States Sentencing Guidelines Manual § 7B1.3(f) (Nov. 2009) ("Any term of imprisonment imposed upon the revocation of . . . supervised release *shall be* ordered to be served consecutively to any sentence of imprisonment that the defendant is serving . . . ." (emphasis added)). Andrews had not yet begun to serve the 24-month term of imprisonment when President Obama issued the commutation order. That reading makes even more sense when one considers that Andrews applied for commutation of only one sentence: the sentence imposed for his second conviction. His application mentioned only that conviction and asked for relief for only that conviction.

That President Obama used the phrase "total sentence" does not necessarily suggest a contrary reading. Andrews received his commutation as part of a single order granting commutation to 29 prisoners. The language used to confer commutation to each prisoner is nearly identical in its opening language: "I hereby [further] commute the total sentence of imprisonment each of the following named persons is now serving to . . . ." These 29 prisoners were serving a variety of sentences, some concurrent and some consecutive. *See* Office of the Pardon Att'y, *Commutations Granted by President Obama*, *supra*. Indeed, Andrews's sentence for his second conviction included concurrent terms of life imprisonment for his

two counts of distributing crack cocaine. So the use of the word "total" can be understood to cover prisoners with concurrent terms of imprisonment.

The Bureau read the commutation order more generously in favor of Andrews, and its reading is both reasonable and entitled to deference. *See Udall*, 380 U.S. at 4, 16–18. It concluded that Andrews was "now serving" both the life term of imprisonment and the consecutive 24-month term of imprisonment. It understood the commutation order to operate within the context of the Bureau's longstanding policies and statutes. "[F]or administrative purposes," the Bureau, by statute and by policy, treats "[m]ultiple terms of imprisonment ordered to run consecutively or concurrently . . . as a single, aggregate term of imprisonment." 18 U.S.C. § 3584(c); Fed. Bureau of Prisons, Program Statement No. 5880.28, *supra*, at 11–12. That is, "[a]s a practical matter," whether a court orders multiple sentences to run consecutively or concurrently "makes no difference" because the Bureau aggregates the sentences when allotting credit for time served and calculating release dates. *United States v. Gonzales*, 520 U.S. 1, 8 (1997). Because the Bureau treats multiple sentences as if all are being served simultaneously for administrative purposes, it read President Obama's commutation order in the light of these ordinary practices and divided the 188-month commutation between the life term and the 24-month term.

Andrews has no problem with that interpretation by the Bureau, insofar as it acknowledges that he was serving his 24-month term at the time of the commutation order. But Andrews argues that President Obama commuted his "total sentence of imprisonment" and that the new 24-month term of imprisonment was not a new sentence but a continuation of his original sentence of 37 months of imprisonment. Andrews relies on precedent explaining that a term of imprisonment imposed for violating conditions of supervised release is not a new sentence but is instead part of the original sentence for the underlying crime. *See Johnson v. United States*, 529 U.S. 694, 700–01 (2000) ("[P]ostrevocation penalties relate to the original offense" and are "part of the penalty for the initial offense . . . . We therefore attribute postrevocation penalties to the original conviction."); *United States v. Romines*, 204 F.3d 1067, 1069 (11th Cir. 2000); *United States v. Woods*, 127 F.3d 990, 992 (11th Cir. 1997) ("[R]evocation . . . constitutes a modification of the terms of the original sentence . . . .").

The government does not disagree that a term of imprisonment imposed for violating the conditions of supervised release is part of the original sentence. But it contends that the Bureau could reasonably understand that the term of imprisonment imposed for the violation is distinct from the term of imprisonment imposed for the initial crime. In short, the new term of imprisonment does not "resurrect" the original term; it is a separate component of the sentence. And when

16

President Obama commuted the "total sentence of imprisonment" that Andrews was "now serving," he commuted only the life and 24-month terms.

"A criminal sentence is a package of sanctions that the district court utilizes to effectuate its sentencing intent." *Pepper v. United States*, 562 U.S. 476, 507 (2011) (quoting *United States v. Stinson*, 97 F.3d 466, 469 (11th Cir. 1996)). That is, "sentence" refers to all sanctions imposed for a crime, and a sentence can have multiple components, including imprisonment, supervised release, and fines. *See* 18 U.S.C. §§ 3571, 3581, 3583. Federal law, 18 U.S.C. § 3583(e), allows the reimprisonment of defendants who violate conditions of supervised release even when they were initially sentenced to the statutory maximum term. *United States v. Proctor*, 127 F.3d 1311, 1313 (11th Cir. 1997). For example, a defendant might initially be sentenced to the statutory maximum term of 15 years of imprisonment and to a term of two years of supervised release. Upon completing his 15-year term of imprisonment, the defendant might then commit another crime a year into serving his supervised release. A district court would be well within its power to order that defendant to serve the remainder of his supervised release in prison, which would be a term of imprisonment that is part of his original sentence but not his original term of imprisonment. 18 U.S.C. § 3583(e)(3); *Johnson*, 529 U.S. at 700–01. That defendant would then serve 16 years in prison despite that the statutory maximum for his underlying crime allowed for only 15 years of

17

imprisonment. The terms of imprisonment are distinct components of his sentence. *See Johnson*, 529 U.S. at 712 (describing reimprisonment after revocation of supervised release as a "new prison term"); *United States v. Haymond*, 139 S. Ct. 2369, 2374 (2019) (same); *Romines*, 204 F.3d at 1069 (describing reimprisonment after revocation of supervised release as an "additional penalty").

The Bureau reasonably read "sentence of imprisonment" synonymously with "term of imprisonment." As precedent establishes, "sentence" refers to the full panoply of punishments imposed for a crime, not only the term of imprisonment. *See Pepper*, 562 U.S. at 507; *United States v. Gonzalez*, 541 F.3d 1250, 1256–57 (11th Cir. 2008) (vacating entirety of sentence because the district court imposed a fine without explaining its basis for doing so and remanding for a full resentencing). The commutation order reflects that understanding when it states that, besides the imprisonment component, the commutation order did not affect any "other components of each respective sentence." That various statutes governing the administration of sentences often use these two phrases interchangeably buttresses that interpretation. *See* 18 U.S.C. § 3581 (entitled "Sentence of Imprisonment" and allowing a district court to "sentence[] [a defendant] to a term of imprisonment"); *id.* § 3582 (entitled "Imposition of a sentence of imprisonment" and containing the "[f]actors to be considered in imposing a term of imprisonment" and the constraints on "[m]odif[ying] an

18

imposed term of imprisonment"); *id.* § 3584 (entitled "Multiple sentences of imprisonment" and explaining when "multiple terms of imprisonment" are to run concurrently or consecutively); *cf. id.* § 3571 (entitled "Sentence of fine" and allowing a district court to "sentence[] [a defendant] to pay a fine").

The President, like Congress, is presumed to know the law and to speak in terminology that subordinate officials would understand. *Cf. White v. Mercury Marine*, 129 F.3d 1428, 1434 (11th Cir. 1997) (explaining that we ordinarily presume that Congress "act[s] with the knowledge of existing law and interpretations when it passes new legislation"); Scalia & Garner, *Reading Law* § 54, at 323 ("[W]hen a statute uses the very same terminology as an earlier statute—especially in the very same field . . .—it is reasonable to believe that the terminology bears a consistent meaning."). The Bureau reasonably understood the phrases "total sentence of imprisonment" and "now serving" to refer to only the "terms of imprisonment" Andrews was then serving. And, at most, Andrews was serving the life and 24-month terms of imprisonment.

## IV.    CONCLUSION

We **AFFIRM** the denial of Andrews's petition.

19

JILL PRYOR, Circuit Judge, concurring specially:

I concur in the result only.