# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-2057

_____

United States of America

*Plaintiff - Appellee*

v.

Jonathan Russell Wright, also known as Jay-One

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central

_____

Submitted: September 18, 2025
Filed: December 30, 2025

_____

Before SMITH, GRUENDER, and SHEPHERD, Circuit Judges.

_____

GRUENDER, Circuit Judge.

In 2012, Jonathan Russell Wright was sentenced to life imprisonment after a federal drug conviction. In 2024, Wright filed a motion for a sentence reduction, citing intervening changes in sentencing law. The district court granted this motion and reduced Wright's sentence to 420 months followed by 10 years of supervised release. Wright appealed, arguing that the district court abused its discretion by not resentencing him to an even lower sentence. In January 2025—after Wright filed

this appeal—President Biden commuted Wright's sentence to 330 months. We review whether the commutation moots Wright's appeal and, if not, whether the district court abused its discretion in resentencing him.

## I. Background

In 2012, a jury convicted Wright of possession with intent to distribute cocaine base in violation of the Controlled Substances Act ("CSA"). *See* 21 U.S.C. § 841(a)(1) (2010). Because of his three prior convictions under an Arkansas statute, Ark. Code. Ann. § 5-64-401, Wright was subject to a sentence enhancement that resulted in a mandatory minimum sentence of life imprisonment. *See* 21 U.S.C. § 841(b)(1)(A) (2010). Those prior Arkansas convictions all involved cocaine.

Six years after Wright's federal conviction, Congress enacted the First Step Act of 2018 ("FSA"). The FSA nonretroactively reduced mandatory minimum sentences for certain federal drug offenses. Pub. L. 115-391, §§ 401(a)(2), 401(c). Had Wright been sentenced after the FSA's enactment, his mandatory minimum sentence would have been twenty-five years, not life imprisonment. § 401(a)(2)(ii). The FSA also enabled certain incarcerated individuals to bring motions for sentence reductions under 18 U.S.C. § 3582(c)(1)(A). Pub. L. 115-391, § 603(b)(1). Section 3582(c)(1)(A) allows a district court to reduce a sentence if it finds that "extraordinary and compelling reasons" warrant such a reduction. Wright filed his 2024 motion for a sentence reduction under this provision.

In his motion, Wright argued that intervening changes in the law created a gross disparity between the sentence he received in 2012 and the sentence he would receive today for the same offense. He argued that, given "a full consideration of [his] individualized circumstances," this disparity was an extraordinary and compelling reason for a sentence reduction. He identified two legal developments as responsible for this disparity. First, the FSA lowered the applicable mandatory minimum sentence for his offense from life imprisonment to twenty-five years. Second, our recent case law suggests that his prior cocaine-related offenses under

-2-

Ark. Code. Ann. § 5-64-401 no longer qualify as predicate offenses for his sentence enhancement. Without this enhancement, his mandatory minimum sentence, even before the FSA, would have been ten years. § 841(b)(1)(A) (2010).

The district court agreed with Wright that he was eligible for a reduction because of the FSA, adopting the Sentencing Commission's view that a nonretroactive change in the law can sometimes be an extraordinary and compelling reason for a sentence reduction. *See* U.S.S.G. § 1B1.13(b)(6).[1] But the district court rejected Wright's argument that his prior convictions under Ark. Code Ann. § 5-64-401 no longer qualify as predicate offenses. The district court cited its order from *United States v. Owens*, Case No. 4:18-cr-167-BSM, Doc. No. 86 (Dec. 15, 2023), in which it held that a cocaine-related conviction under § 5-64-401 qualified as a predicate offense under the Armed Career Criminal Act ("ACCA"). The district court then "decline[d] to revisit this issue" here. After considering the 18 U.S.C. § 3553(a) factors, the district court determined that a sentence of 420 months, plus a term of ten years of supervised release, was appropriate.

Wright appealed, arguing that the district court abused its discretion in resentencing him by failing to consider that his prior Arkansas convictions are no longer predicate offenses and by inappropriately weighing the § 3553(a) factors. Wright maintains that the district court should have given him a lower sentence of time served. The Government did not file a cross-appeal.

In January 2025, after Wright filed this appeal, President Biden commuted his sentence to 330 months. Wright and the Government have both expressed that the

---

[1]U.S.S.G. § 1B1.13(b)(6), which the Sentencing Commission promulgated in 2023, provides that if a defendant received "an unusually long sentence" and has served at least 10 years of that sentence, courts may consider a change in the law as an extraordinary and compelling reason but only "where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the [sentence reduction] motion is filed, and after full consideration of the defendant's individualized circumstances."

commutation does not moot Wright's appeal because the district court could, on remand, resentence him to a term less than 330 months.

## II.  Discussion

### A.

We must first address whether President Biden's commutation of Wright's sentence moots Wright's § 3582(c)(1)(A) motion.  Under Article III, we may adjudicate only live cases or controversies.  *Whitfield v. Thurston*, 3 F.4th 1045, 1047 (8th Cir. 2021).  If we cannot grant effective relief, then this case is moot and we must dismiss for lack of jurisdiction.  *Ali v. Cangemi*, 419 F.3d 722, 723-24 (8th Cir. 2005).  Here, both parties argue that this case remains live because the district court could modify Wright's sentence to a term less than 330 months.  But this argument assumes that courts have the constitutional authority to modify an executive commutation, and neither party has identified precedent indicating that courts have this authority.  "Although neither party has urged that this case is moot, resolution of the question is essential if [we] are to function within [our] constitutional sphere of authority."  *North Carolina v. Rice*, 404 U.S. 244, 246 (1971).

A circuit split exists on whether a court can modify a commuted sentence. The Fourth Circuit has held that a court cannot disturb a "presidentially commuted sentence" even if only by further reducing the sentence.  *Blount v. Clarke*, 890 F.3d 456, 462 (4th Cir. 2018).  The Sixth Circuit, conversely, has reasoned that an executive commutation only modifies the *execution* of a judgment, and that a court can still correct its own mistakes in issuing the original sentence.  *Dennis v. Terris*, 927 F.3d 955, 959-61 (6th Cir. 2019).  Under this view, a court might sometimes be able to reduce a commuted sentence.  *See id.*  Other circuits have treated a defendant's challenge to an already-commuted sentence as a live dispute without analyzing this latent separation-of-powers question.  *See, e.g., United States v. Sanders*, 133 F.4th 341, 356 (5th Cir. 2025); *United States v. Davis*, 130 F.4th 1272, 1286 (11th Cir. 2025).

We have not yet weighed in on this question. Ordinarily, therefore, we would remand this case to the district court to assess whether President Biden's commutation moots this case. *See MPAY Inc. v. Erie Custom Comput. Applications, Inc.,* 970 F.3d 1010, 1021 (8th Cir. 2020) ("We are a court of appellate review, not of first view.") (citation modified). But where, as here, the novel question "raises purely legal issues," we instead might resolve it "in the interest of judicial economy." *Phelps-Roper v. Troutman*, 712 F.3d 412, 417 (8th Cir. 2013).

We choose to resolve this mootness question ourselves. If we did not, we would not have jurisdiction to instruct the district court on how to resolve the underlying merits of this case. *See Arkansas Blue Cross and Blue Shield v. Little Rock Cardiology Clinic, P.A.*, 551 F.3d 812, 816 (8th Cir. 2009) ("A court may not assume 'hypothetical jurisdiction' to decide contested questions of law when its jurisdiction is in doubt") (citation modified). Further, since neither party believes this case is moot, remand would not enable any "vetting through the adversarial process" of this question before the district court. *See Montin v. Est. of Johnson*, 636 F.3d 409, 416 (8th Cir. 2011) (discussing reasons for remanding).

We determine that President Biden's commutation did not moot Wright's motion. The President's power to commute criminal sentences derives from the Article II power to "grant Reprieves and Pardons." *Schick v. Reed*, 419 U.S. 256, 260 (1974) (citing U.S. Const. art. II, § 2, cl. 1). A commutation abridges the enforcement of a judgment, "but does not alter it qua judgment." *United States v. Benz*, 282 U.S. 304, 311 (1931); *accord Nixon v. United States*, 506 U.S. 224, 232 (1993) (noting that a pardon does not "overtur[n]" a judgment by some other tribunal but instead "mitigates or sets aside *punishment* for a crime") (citation modified) (italics in original). "The judicial power and the executive power over sentences are readily distinguishable." *Benz*, 282 U.S. at 311. A commuted sentence, therefore, does not become "an executive sentence in full." *Dennis*, 927 F.3d at 959; *see also Duehay v. Thompson*, 223 F. 305, 307-08 (9th Cir. 1915) ("[T]he sentence remains, nevertheless, the judgment of the court, and not of the executive, and is subject to the regulations of law respecting its enforcement."). Instead, a commuted sentence

-5-

remains a judicial sentence—but one that the executive will only enforce to a limited extent.

A court retains the power to hear collateral attacks to the underlying judicial sentence. *Dennis*, 927 F.3d at 960. Otherwise, a President could wield the commutation power opportunistically to insulate unlawful sentences from judicial review. This power would trammel the judiciary's authority to correct its sentencing decisions. *See Mistretta v. United States*, 488 U.S. 361, 396 (1989) ("[J]udgment in the field of sentencing has been and remains appropriate to the Judicial Branch"). And this power could effectively nullify the legislature's efforts to enable defendants to challenge their sentences. *See, e.g.,* 18 U.S.C. 3742(a); 28 U.S.C. § 2255; 18 U.S.C. § 3582(c)(1)(A); *see Immigr. & Naturalization Serv. v. Chadha*, 462 U.S. 919, 946-48 (1983) (describing the President's "limited and qualified" veto power).

Wright is not challenging his commutation. *Cf. Schick*, 419 U.S. at 267 (holding that limits to the President's pardon power "if any, must be found in the Constitution itself"). Instead, he is challenging his underlying sentence. *See Dennis*, 927 F.3d at 960 (distinguishing a challenge to an executive commutation from a challenge to a judicial sentence). We now turn to the merits of that challenge.

**B.**

Ordinarily, our threshold step when reviewing an 18 U.S.C. § 3582(c)(1)(A) sentence reduction is to review *de novo* whether an individual is eligible for such a reduction. *United States v. McDonald*, 944 F.3d 769, 771 (8th Cir. 2019). The district court determined that Wright was eligible by adopting the Sentencing Commission's view that certain nonretroactive changes in law—here, the FSA's nonretroactive sentence reductions—can sometimes warrant eligibility. *See* U.S.S.G. § 1B1.13(b)(6). There is significant tension between the district court's decision and our precedent. *See United States v. Crandall*, 25 F.4th 582, 586 (8th Cir. 2022) (decided before § 1B1.13(b)(6) went into effect and holding that the FSA's nonretroactive sentence reductions "cannot contribute to a finding of

'extraordinary and compelling reasons' for a reduction in sentence under § 3582(c)(1)(A)"); *see also Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 401 (2024) ("The judiciary is the final authority on issues of statutory construction.") (citation modified).[2]

However, because the Government did not file a cross appeal, we must accept the district court's determination that Wright was eligible for a sentence reduction. *See Duit Constr. Co. Inc. v. Bennett*, 796 F.3d 938, 941 (8th Cir. 2015) (ordinarily, "an appellate court may not alter a judgment to benefit a nonappealing party") (citation modified). We thus assume Wright's eligibility for a sentence reduction without endorsing the district court's reasoning.[3]

Our review, then, is limited to whether the district court abused its discretion in resentencing Wright. *See McDonald*, 944 F.3d at 771. "The abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." *Koon v. United States*, 518 U.S. 81, 100 (1996). The sentencing judge must "set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *United States v. Robinson*, 516 F.3d 716, 718 (8th Cir. 2008).

---

[2]Further, the Supreme Court has granted certiorari to resolve "[w]hether a district court may consider disparities created by the First Step Act's prospective changes when deciding if 'extraordinary and compelling reasons' warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i)." *See* Petition for Writ of Certiorari at i, *Rutherford v. United States*, 120 F.4th 360 (3d Cir. 2024), *cert. granted*, 145 S. Ct. 2776 (U.S. Jun. 6, 2025) (No. 24-820). *Rutherford* has been consolidated with *Carter v. United States*, No. 24-1115, 2024 WL 5339852 (3d Cir. Dec. 2, 2024), *cert. granted* 145 S. Ct. 2775 (U.S. Jun. 6, 2025) (No. 24-860).

[3]This assumption precludes the Government's challenge that Wright's motion is only cognizable under 28 U.S.C. § 2255. "Since [the Government] did not file a cross-appeal, we will not consider its argument which would have the effect of enlarging [its own] rights or of lessening the rights of [Wright]." *See Shrable v. Eaton Corp.*, 695 F.3d 768, 772 (8th Cir. 2012) (citation modified).

Wright presents two arguments for why the district court abused its discretion when resentencing him.  First, Wright argues that the district court did not consider that his prior convictions no longer qualify as predicate offenses for his sentence enhancement and thus that he would be subject to a lower mandatory minimum sentence today.  Wright also argues that the district court abused its discretion because it inappropriately weighed the § 3553(a) factors.  We agree with Wright's first argument.

Wright's prior cocaine-related convictions under Ark. Code Ann. § 5-64-401 are no longer predicate offenses for his sentence enhancement under our recent case law.  Wright received his sentence enhancement because he had "two or more prior convictions for a felony drug offense."  21 U.S.C. § 841(b)(1)(A) (2010).  To assess whether a conviction under § 5-64-401 falls under the federal definition of a "felony drug offense," we apply the "categorical approach," examining solely "the statutory definition of the prior offense, not the facts underlying a defendant's prior convictions."  *See United States v. Oliver*, 987 F.3d 794, 806 (8th Cir. 2021) (citation modified).  "If the state offense sweeps more broadly, or punishes more conduct than the federal definition, the conviction does not qualify as a predicate offense."  *United States v. Vanoy*, 957 F.3d 865, 867 (8th Cir. 2020) (citing *Descamps v. United States*, 570 U.S. 254, 261 (2013)).

Section 5-64-401 criminalizes a wider range of cocaine isomers than the federal definition of a felony drug offense encompasses.  Section 5-64-401 criminalizes certain controlled substances.  Among those are "narcotic drug[s]," which Arkansas law defines in two ways.  First, a narcotic drug is "any drug . . . defined as a narcotic drug by order of the director [of the Arkansas Department of Health]."  § 5-64-101(18)(A)(i) (2010); *see* § 5-64-101(o)(1) (2004).  The director, in turn, includes as a narcotic drug "cocaine" and its "salts, isomers, derivatives and salts of isomers and derivatives."  Ark. Admin. Code § 007.07.2, sched. II(b)(4); *see also* Ark. Code. Ann. § 5-64-201 (discussing the director's authority over drug schedules).  Second, a narcotic drug is "also" any drug contained in an enumerated list, which includes "[c]ocaine, its salts, optical and geometric isomers, and salts of

isomers." § 5-64-101(o)(2)(D) (2004); § 5-64-101(18)(B)(iv) (2010). The federal definition of a felony drug offense, meanwhile, encompasses "[c]ocaine, its salts, optical and geometric isomers, and salts of isomers." 21 U.S.C. §§ 802(17)(D), 802(44) (2009).

Section 5-64-401 is thus too broad to qualify as a federal felony drug offense because § 5-64-401 incorporates the director's definition of "narcotic drug" that criminalizes all cocaine isomers, while federal felony drug offenses encompass only "optical and geometric" cocaine isomers. A drug statute that criminalizes even "one additional isomer" of cocaine cannot produce a predicate felony drug offense. *See United States v. Owen*, 51 F.4th 292, 296 (8th Cir. 2022). As the Government observes, Arkansas specifically criminalizes "optical and geometric isomers," like federal law does. But, contrary to the Government's suggestion, this narrow provision does not apply "in lieu" of the director's broader criminalization of cocaine isomers generally. Instead, "an isomer included in either clause is prohibited." *See United States v. Heard*, 62 F.4th 1109, 1112 (8th Cir. 2023). This is because § 5-64-401 criminalizes narcotic drugs that are defined in an enumerated statutory list *in addition to* narcotic drugs that are defined as such by the director.

The Government's remaining arguments on this issue are unavailing. First, the Government suggests that § 5-64-401 cannot have incorporated the director's definition of narcotic drug because the director's definition was contained in a regulation. But we have elsewhere considered a state's regulatory drug list when, in applying the categorical approach, we evaluated the scope of a state statute that incorporated that list. *See, e.g., Heard*, 62 F.4th at 1112. The Government offers no precedent indicating we should not do so again here.

Second, the Government raises an array of textual arguments why we should not consider the director's broad criminalization of cocaine isomers. The Government argues that Arkansas's narrow statutory prohibition on "optical and geometric" isomers should prevail over the director's broad language. The Government adds that incorporating the director's broad language into § 5-64-401

would render the narrow statutory prohibition superfluous.  And the Government argues that the simultaneous existence of two different prohibitions on cocaine renders Arkansas law ambiguous.  These textual arguments, however, are premised on interpretive rules that are neither mandatory nor necessarily sensible.  *See, e.g., Snyder v. United States*, 603 U.S. 1, 19 (2024) (explaining that a legislature might write statutes in a "belt and suspenders manner" to avoid "potential ambiguities, gaps, or loopholes").  The Arkansas legislature might have wanted to ensure that certain drugs would be criminalized and, simultaneously, to empower the director to identify additional drugs that should be criminalized.  Further, all of the Government's textual arguments are inconsistent with our precedent.  In *Heard*, for example, we determined that Minnesota *unambiguously* adopted a broad statutory definition of MDMA, even though that definition encompassed a narrower definition of MDMA appearing elsewhere in Minnesota law.  62 F.4th at 1112-14.

Third, the Government argues that *United States v. Buckley*, 146 F.4th 679 (8th Cir. 2025) and *United States v. Meux*, 918 F.3d 589, 591 (8th Cir. 2019) (per curiam) support the conclusion that Wright's convictions under § 5-64-401 are predicate felony drug offenses.  But neither case controls here.  In *Buckley*, we held that violations of certain Arkansas statutes criminalizing cocaine qualify as predicate offenses for an ACCA sentence enhancement.  146 F.4th at 682.  But the statutes at issue in *Buckley*—§ 5-64-420(a)(1) (2011) and § 5-64-422(a) (2011)—did not incorporate Arkansas's drug schedules, which contain the broad language criminalizing all cocaine isomers.  *See id*. at 680-82.  Conversely, the Arkansas statute here, § 5-64-401, impliedly incorporates those schedules by criminalizing "narcotic drugs," which include narcotic drugs the director defines.  *See* § 5-64-101(o)(1) (2004); § 5-64-101(18)(A)(i) (2010).  The director defines narcotic drugs in the drug schedules.  *See* Ark. Admin. Code § 007.07; Ark. Code. Ann. § 5-64-201.  As for *Meux*, there we did not analyze, or mention, whether § 5-64-401 criminalized too many types of cocaine isomers to qualify as a felony drug offense.  *See generally* 918 F.3d at 590-92; *see Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the

court nor ruled upon, are not considered as having been decided as to constitute precedents.").

Finally, we need not apply the "reasonable probability test" to define § 5-64-401, as the Government advises, because this test applies only when a statute is ambiguous. *Gonzales v. Wilkinson*, 990 F.3d 654, 660 (8th Cir. 2021). Section 5-64-401 unambiguously applies to all cocaine isomers. *See Owen*, 51 F.4th at 296 (holding that a statute unambiguously covers all cocaine isomers where it "reaches the 'isomers' of cocaine and contains no limiting language") (citation modified).

Wright, therefore, was correct that his prior convictions under § 5-64-401 are no longer predicate offenses. The district court's decision not to consider this argument when sentencing him was based on an erroneous legal conclusion and accordingly was an abuse of discretion. Remand is warranted on this basis alone.[4]

When resentencing Wright on remand, the district court is required only to *consider* that Wright's prior convictions no longer qualify as predicate offenses for his sentence enhancement. The district court is not required to accept this point as a reason to further reduce Wright's sentence. *See Concepcion v. United States*, 597 U.S. 481, 502 (2022). By extension, nor is the district court required to reduce Wright's sentence below the commuted level of 330 months, although the district court may do so.

---

[4]Wright's criticism of how the sentencing court weighed the § 3553(a) factors is unpersuasive. The district court "has wide latitude to weigh the relevant factors and assign some factors greater weight than others in determining an appropriate sentence." *United States v. Black*, 992 F.3d 703, 706 (8th Cir. 2021) (citation modified). Here, the district court considered Wright's "lengthy criminal history and the seriousness of his drug offense," among several other factors. Wright's "disagreement with the way the district court weighed the factors in this case falls well short of demonstrating an abuse of discretion." *See Black*, 992 F.3d at 706.

## III.  Conclusion

We therefore vacate Wright's sentence and remand to the district court for resentencing consistent with this decision.

_____