STATE of Missouri, Respondent,

v.

**Donna Marie GREENE, Appellant.**

**No. WD 41777.**

Missouri Court of Appeals,
Western District.

Jan. 9, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 27, 1990.

Application to Transfer Denied
April 17, 1990.

James R. Wyrsch, Michael P. Joyce, Kansas City, for appellant.

William L. Webster, Atty. Gen., Frank A. Jung, Asst. Atty. Gen., Jefferson City, for respondent.

Before BERREY, P.J., and TURNAGE and ULRICH, JJ.

BERREY, Judge.

Appellant, Donna Marie Greene, was tried and convicted on charges of possession of cocaine, § 195.020, RSMo 1986; possession of diazepam, § 195.240, RSMo 1986; possession of marijuana, § 195.020, RSMo 1986; possession of drug paraphernalia with intent to use § 195.020.2, RSMo 1986; and stealing, § 570.030, RSMo 1986. She was sentenced to five (5) years for possession of cocaine; five (5) years for possession of diazepam; six months and a $250 fine for possession of marijuana; three months for possession of drug paraphernalia with intent to use; and six months for stealing, sentences to run concurrently. The sentences were suspended and appellant was placed upon probation. Appellant presents two points for consideration on appeal: (1) that the trial court erred in finding appellant guilty because the evidence supporting her conviction was established by tainted evidence gathered in an illegal search, and (2) that the trial court erred in finding appellant guilty of possession of cocaine because it lacked sufficient evidence in that the isomer of cocaine seized from defendant was not proven to be L-cocaine. Affirmed.

On May 26, 1988, Thomas Delaney, a loss prevention associate of Wal–Mart, observed appellant place a package of Centrum vitamins in her purse while she was shopping at that establishment. He followed her, noting that she did not pull the vitamins out of her purse to be paid for while she was checking out. He followed her outside. There he confronted her and asked her to come back into the store with her. She acquiesced, following him back inside store, going into a back room with him and with the store's assistant manager, Laura Holland. Appellant was in-

formed that Delaney had seen her place the package of Centrum vitamins in her purse. Appellant refused to let either Delaney or Holland look in her purse. The police were called.

Prior to the arrival of the police, appellant engaged in various antics to distract the attention of Delaney and Holland. Holland observed appellant open her purse and remove a package of Centrum vitamins and a can of body spray, placing them on the floor. The police arrived. Delaney informed Patrolman Timothy Tracey, one of the officers responding to the summons for help, that although he had observed the theft of the Centrum vitamins, he did not see defendant steal the body spray. Officer Tracey asked appellant for her purse. She handed it over after Tracey informed her, "that she was under arrest."

Officer Tracey opened appellant's purse. He saw several personal items. Checking inside a small pocket in the interior of the purse, he discovered a pipe, which he knew to be a marijuana pipe. A tube in the pipe contained a "green leafy type substance." He also noticed two black film canisters in the purse. Officer Tracey did not search the purse further, as he lacked the means to properly collect the evidence. He sealed the purse, intending to search further at the police station instead of continuing the search in the unsecured area. Officer Tracey then placed appellant under arrest for possession of a controlled substance.

After arriving at the police station and obtaining evidence collection bags, Tracey searched the purse more thoroughly. In addition to the pipe he found small package of a brown substance in a black film canister. In the second film canister he found a cellophane bag containing a green leafy substance and nine blue pills with the number "10" and "H.D." marked upon them. A round vial in the purse contained white powder and a roach clip.

These substances were later tested. The blue pills were determined to be diazepam. The brown substance in one film canister and the green leafy substance in the other canister were found to be marijuana. A forensic chemist performed a color test, ultraviolet spectrophotometry, thin layer chromatography and a microscopic crystal test upon the white powder found in the round vial. These tests determined that the white powder contained cocaine.

Appellant was charged with possession of cocaine, possession of marijuana, possession of diazepam, possession of drug paraphernalia with intent to use and stealing. She entered a plea of not guilty on all counts. In a court-tried case, appellant was found guilty on all charges and her motion to suppress was overruled.

Appellant, in her first point, contends that the evidence used to secure her conviction was tainted. She complains that this evidence was seized in an illegal, warrantless search in contravention of her rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and under Article I, §§ 10 and 15 of the Missouri Constitution.

■ Any analysis of a warrantless search and seizure must necessarily begin with the observation that warrantless searches are prima facie invalid and are only permitted subsequently if the search can be shown to have been justified by reason of a specific exception. *State v. Cone*, 744 S.W.2d 860, 863 (Mo.App.1988). There are several well known exceptions to the warrant requirement, including: a search incident to a lawful arrest; a protective search; the seizure of an object in plain view; a consensual search; a search required by the exigent circumstances of the situation; an inventory search; and the seizure of property which has been abandoned. *State v. Mills*, 671 S.W.2d 437 (Mo. App.1984). The search made by Officer Tracey in the instant case is most properly classified as a search incident to a lawful arrest.

■ The United States Supreme Court in *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969), stated, "There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control' —construing that phrase to mean the area from within which he might gain posses-

sion of a weapon or destructible evidence." Appellant was lawfully under arrest at the time of Officer Tracey's initial search and her purse was well within the area of her immediate control. Appellant complains that once Officer Tracey took the purse from her "he prevented destruction or loss of evidence contained therein." Appellant's reasoning would render the search incident doctrine a mere exercise in semantics. Her reasoning, in any case, has been squarely rejected by the United States Supreme Court. *See New York v. Belton*, 453 U.S. 454, 459, 101 S.Ct. 2860, 2863, 69 L.Ed.2d 768 (1981) (whether or not one of the reasons supporting a search incident to a lawful arrest is present need not be litigated). Thus, Officer Tracey's initial search of appellant's purse was proper.

■ Certain other well delineated principles justify Officer Tracey's continued search of appellant's purse at the police station. "It is also plain that searches and seizures that could be made on the spot at the time of arrest may legally be conducted later when the accused arrives at the place of detention." *United States v. Edwards*, 415 U.S. 800, 803, 94 S.Ct. 1234, 1237, 39 L.Ed.2d 771 (1974). To be sure, once police have reduced property of the arrestee, such as luggage, to their exclusive control then that property is no longer a proper subject for search incident to a lawful arrest. *United States v. Chadwick*, 433 U.S. 1, 15, 97 S.Ct. 2476, 2485, 53 L.Ed.2d 538 (1977). However, the purse in question is not akin to the luggage spoken of in *Chadwick*. The court in *State v. Woods*, 637 S.W.2d 113, 116 (Mo.App.1982), made the observation, "that a woman's purse is, like the arrestee's clothes in *Edwards*, more immediately associated with the person of the accused than is other personal property, such as luggage or an attache case." Appellant's Point I is denied.

■ Appellant's Point II states that the trial court erred in finding appellant guilty under Count I, possession of cocaine, § 195.020, RSMo 1986, because the isomer of the cocaine seized from appellant's purse was not proven to be L-cocaine.

Cocaine exists in two isomer forms; L-cocaine which is the isomer derived from coca leaves; and D-cocaine which is not. At trial, the forensic chemist who testified, Kevin F. Krautman, was not able to testify which isomer form of cocaine was found in appellant's purse. Appellant contends that the state was required to prove that the cocaine in question was L-cocaine.

Appellant was charged under § 195.020, RSMo 1986, which makes it "unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, distribute, or compound any controlled or counterfeit substance except as authorized in §§ 195.010 to 195.320." In support of her contention, appellant cites § 195.017.4(1)(d) which reads:

> Coca leaves and any salt, compound, derivative, or preparation of coca leaves, and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, but not including decocainized coca leaves or extractions which do not contain cocaine or ecgonine.

§ 195.017.4(1)(d), RSMo 1986.

However, § 195.017.11 provides that, "[t]he department of health shall revise and republish the schedules semiannually for two years from September 28, 1971, and thereafter annually." Pursuant to § 195.017.11, RSMo 1986, the department of health publishes schedules which are found at 19 CSR 30–1.010. The 1987 schedule changed the definition found in the statute:

> [C]oca leaves and any salt, compound, derivative or preparation of coca leaves including cocaine and ecgonine and their salts isomers, derivatives and salts of isomers and derivatives and any salt, compound, derivative or preparation thereof which is chemically equivalent or identical with any of these substances, except that the substances shall not include decocainized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine....

19 CSR 30–1.010.

The change, "including cocaine and ecgonine and their salts isomers....," renders

appellant's attempts to distinguish between isomers useless, as all isomers of cocaine are prescribed. Appellant's Point II is denied.

The judgment of the trial court is affirmed.

All concur.