# United States Court of Appeals
### For the Eighth Circuit

_____

No. 21-3870

_____

United States of America

*Plaintiff - Appellant*

v.

Maurice Antonio Owen, also known as Maurice Antonio Parham

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: May 13, 2022
Re-Submitted: July 29, 2022
Filed: October 19, 2022
[Published]

_____

Before ERICKSON, STRAS, and KOBES, Circuit Judges.

_____

PER CURIAM.

Maurice Owen twice pleaded guilty to selling cocaine in Minnesota.  The question for us is whether these convictions count as "serious drug offense[s]" under

the Armed Career Criminal Act. 18 U.S.C. § 924(e)(1). The district court[1] concluded that the answer was no because state law criminalizes the sale of drugs that the federal controlled-substance schedules do not. We agree, so we affirm.

## I.

The Armed Career Criminal Act (ACCA) sets a fifteen-year minimum sentence for anyone who possesses a firearm as a felon and has "three previous convictions . . . for a violent felony or a serious drug offense." 18 U.S.C. § 924(e)(1). To determine whether a prior conviction counts, we look only at "the legal definition of [the] crime, not [the defendant's] actual acts." *United States v. Schneider*, 905 F.3d 1088, 1090 (8th Cir. 2018); *see Shular v. United States*, 140 S. Ct. 779, 783 (2020). If the state's definition of the crime "sweeps more broadly, or punishes more conduct than the federal definition, the conviction does not qualify as a predicate offense." *United States v. Vanoy*, 957 F.3d 865, 867 (8th Cir. 2020).

The way to determine whether a state statute "sweeps more broadly" is by examining its text and structure. *Id.* at 868. Sometimes, a statute lays out a single crime with a single set of elements. *See Schneider*, 905 F.3d at 1090. In analyzing this type, a so-called "indivisible" statute, we simply check to see if it "criminalizes a broader swath of conduct" than the generic offense or federal definition, whichever happens to apply. *Descamps v. United States*, 570 U.S. 254, 258 (2013); *see also Shular*, 140 S. Ct. at 783–84. The task becomes more difficult, however, if a statute is "divisible," meaning it defines "multiple crimes by listing more than one set of elements." *Schneider*, 905 F.3d at 1090.

Divisible statutes call for a modified categorical approach, which involves peeking at certain documents to identify "what crime, with what elements, a defendant was convicted of." *Mathis v. United States*, 579 U.S. 500, 505–06 (2016)

---

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

(listing documents included in this "limited class"—otherwise known as *Shepard* documents—as "the indictment, jury instructions, or plea agreement and colloquy"). Then, once we identify the specific crime, we determine whether it reaches "more conduct than the federal definition" (or the generic offense). *Vanoy*, 957 F.3d at 867; *see also Descamps*, 570 U.S. at 258. If the answer is yes, the conviction does not count under ACCA. *See Mathis*, 579 U.S. at 509.

The parties agree that Minnesota's third-degree drug-sale statute is divisible based on the type of drug.[2] *See* Minn. Stat. § 152.023, subd. 1(1). We assume without deciding that it is because the answer will be the same either way. If Minnesota's definitions of "[n]arcotic drug" and "[c]ocaine," Minn. Stat. § 152.01, subd. 3a, 10, include drugs that the federal controlled-substance schedules do not, *see* 18 U.S.C. § 924(e)(2)(A), Owen's convictions will not count under ACCA regardless of whether the statute is divisible.

## II.

To count, both convictions must be "serious drug offense[s]": crimes "involving" the distribution of a drug listed in the federal controlled-substance schedules. 18 U.S.C. § 924(e)(2)(A)(ii). One of the listed drugs is cocaine, 21 U.S.C. § 812, sched. II(a)(4)—the drug Owen twice sold in Minnesota, *see* Minn. Stat. § 152.023, subd. 1(1) (criminalizing sales of "mixtures containing a narcotic drug").

Minnesota, however, uses its own definition of cocaine for its third-degree drug-sale statute. *See State v. Richmond*, 730 N.W.2d 62, 67 (Minn. Ct. App. 2007) (citing Minn. Stat. § 152.01, subd. 3a). Anything covered by that definition "is . . . a schedule II narcotic drug." *Id.* (emphasis omitted); *Babinski v. Am. Fam. Ins. Grp.*,

---

[2]We refer to the particular crime that Owen committed as third-degree drug sale, but the offense is part of a larger statute that criminalizes the possession *and* sale of certain types of controlled substances, including narcotic drugs. *See* Minn. Stat. § 152.023 (defining "controlled substance crime in the third degree").

569 F.3d 349, 354 (8th Cir. 2009) ("[D]ecisions of the Minnesota Court of Appeals 'are persuasive authority, and we must follow them when they are the best evidence of what state law is.'" (brackets omitted)). The question for us is whether Minnesota's definition of cocaine sweeps more broadly than the one in the federal controlled-substance schedules.

Minnesota's all-inclusive definition covers "coca leaves and any salt, compound, derivative, or preparation of coca leaves, including cocaine and ecgonine, *the salts and isomers of cocaine and ecgonine*, and the salts of their isomers and any salt, compound, derivative, or preparation thereof that is chemically equivalent or identical with any of those substances." Minn. Stat. § 152.01, subd. 3a (emphasis added). By specifically mentioning "*the . . . isomers* of cocaine," the definition sweeps in any substance with "the same chemical composition" as cocaine, even if it has a different "structural form." *Dictionary of Science and Technology* 1151 (1992) (explaining chemical isomerism); *see also United States v. Phifer*, 909 F.3d 372, 376 (11th Cir. 2018) (defining isomers as "molecules that share the same chemical formula but have their atoms connected differently, or arranged differently in space" (brackets omitted)).

Cocaine has multiple isomers. *See* 1 Gerald F. Uelmen & Alex Kreit, *Drug Abuse and the Law Sourcebook* § 5:23 (2022). The problem for the government is that federal law criminalizes just two: optical and geometric isomers. 21 U.S.C. §§ 802(14), 812, sched. II(a)(4); 21 C.F.R. § 1308.02. Minnesota's statute, by contrast, bans them all.[3]

We have already concluded that a drug statute that criminalizes even one additional isomer does not qualify as a "serious drug felony." *United States v. Oliver*, 987 F.3d 794, 806–07 (8th Cir. 2021) (holding that an Illinois drug statute

---

[3]Even if the third-degree drug-sale statute is divisible by cocaine isomer, it would make no difference here because the *Shepard* documents mention only cocaine, not the form of it that Owen sold. *See Shepard v. United States*, 544 U.S. 13, 20–21 (2005) (listing the types of documents that a court can consider).

was overbroad because it covered "optical, *positional*, and geometric isomers" of cocaine (emphasis added)).  It should come as no surprise that a statute that reaches even more is overbroad too.  *See United States v. De La Torre*, 940 F.3d 938, 951 (7th Cir. 2019) (interpreting a similar Indiana statute the same way).  This means that Owen's third-degree drug-sale convictions do not count as "serious drug offense[s]" under ACCA.  *See Oliver*, 987 F.3d at 806–07.

## III.

Despite the clear and unambiguous language in Minnesota's definition, the government claims that there is no "realistic probability" that Minnesota would prosecute the sale of cocaine isomers other than those listed in the federal schedules.  At best, it argues, a prosecution for anything other than an optical or geometric isomer is only a "theoretical possibility."  After all, according to the government, other isomers exist only in the lab at this point.

The science notwithstanding, the government's argument cannot succeed because the realistic-probability test is about resolving ambiguities.  *See Gonzalez v. Wilkinson*, 990 F.3d 654, 660 (8th Cir. 2021) (explaining that the realistic-probability test applies only when a state statute has an "indeterminate reach" (citation omitted)); *see also* Br. of Appellant 38 (describing it as a "useful interpretive rule to resolve a state statute's ambiguity").  *Compare Brown v. United States*, 929 F.3d 554, 559 (8th Cir. 2019) (adopting the same rule in an ACCA case), *with United States v. Bragg*, 44 F.4th 1067, 1076 (8th Cir. 2022) (declining to apply *Gonzalez*'s approach in a case involving ACCA's *force* clause).  The definition of cocaine, as we explain above, is unambiguously broad: it reaches "*the . . . isomers* of cocaine" and contains no limiting language.  *See Gonzalez*, 990 F.3d at 658, 660–61 (concluding that it took no "legal imagination" to determine the reach of a Florida statute that prohibited possession of "all parts of any [Cannabis] plant").  The "realistic probability," in other words, is "evident from the language of the statute itself," *id.* at 660, just like in *Oliver*, 987 F.3d at 806.  It is not our job "to rewrite [the] statute to conform" to federal law or "a supposed practical understanding of

the drug trade." *United States v. Ruth*, 966 F.3d 642, 648 (7th Cir. 2020); *see also Oliver*, 987 F.3d at 807–08 (relying on *Ruth*).[4]

IV.

We accordingly affirm the judgment of the district court.

_____

---

[4]Given our conclusion that the third-degree drug-sale statute is overbroad when it comes to cocaine, there is no need to address Owen's argument that a jury should have decided whether he committed his two drug sales on "occasions different from one another." 18 U.S.C. § 924(e)(1).