# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-1380
_____

United States of America

*Plaintiff - Appellant*

v.

Lorenzo Eugene Heard, Jr.

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: October 19, 2022
Filed: March 16, 2023
_____

Before SMITH, Chief Judge, BENTON and SHEPHERD, Circuit Judges.
_____

SMITH, Chief Judge.

Lorenzo Heard was convicted of violating 18 U.S.C. § 922(g)(1). The district court[1] sentenced Heard to 75 months' imprisonment. The government appeals the district court's decision not to enhance Heard's sentence under the Armed Career

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

Criminal Act (ACCA), 18 U.S.C. § 924(e)(1). We find that the version of the Minnesota statute applicable to Heard's 2011 felony drug convictions prohibiting isomers of methylenedioxymethamphetamine (MDMA) was overbroad. Therefore, Heard does not have the requisite three ACCA convictions for enhanced sentencing. We affirm the district court.

I. *Background*

On May 1, 2018, Heard struck a parked truck while driving a friend's vehicle. Heard abandoned the vehicle and fled on foot. A witness called police. Upon arrival and search, the police found Heard's Minnesota identification card and a loaded .380 handgun in the driver's side floorboard. Investigators found DNA on the handgun, which matched Heard's DNA profile. Heard was charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

Heard pleaded guilty to the offense pursuant to a written plea agreement. Heard reserved the right to contest the government's attempt to enhance his sentence under the ACCA. The ACCA applies to defendants who have three prior convictions for either serious drug offenses or violent felonies. 18 U.S.C. § 924(e)(1). The government asserted four predicate offenses under the ACCA: a second-degree assault conviction in 2000, a robbery conviction in 2006, and two felony drug convictions in 2011. Heard opposed the use of the 2011 drug convictions as predicate offenses, arguing they did not qualify as serious drug offenses under the ACCA. The convictions were both under a Minnesota statute criminalizing the drug MDMA, also known as "ecstasy." Heard argued that the Minnesota statute criminalized isomers of MDMA that federal law did not, making it overbroad. The government argued that the Minnesota and federal laws were coextensive.

At sentencing, the district court found the Minnesota statute to be broader than its federal equivalent. Specifically, the court noted that there were isomers of MDMA that Minnesota law criminalized and federal law did not. Further, the court found that

because the Minnesota statute was unambiguous, the reasonable-probability test did not apply. As a result, the court concluded that the 2011 drug convictions could not count as predicate offenses for the statute and declined to apply the ACCA sentencing enhancement.

## II. *Discussion*

The government argues on appeal that the definition of MDMA at Minnesota Rules, part 6800.4210 is identical to the federal definition of MDMA. They argue that the district court should have deferred to the expert agency's interpretation of the term "isomers," which is contained in the Rule, rather than allowing the statute to expand the definition. They further contend that the court should have concluded that the term "isomers" in the statute should have been limited by the definitions contained both in the rule and in federal law. Lastly, they argue that "isomers" is ambiguous enough that the district court should have required Heard to satisfy the realistic-probability test.

Congress passed the ACCA in 1984 to provide enhanced penalties for felons who commit crimes with firearms when they have three or more predicate offenses. 18 U.S.C. § 924(e)(1). These offenses can be either violent felony offenses or serious drug offenses. *Id.* The statute defines a serious drug offense as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii).

"To determine whether an offender's prior convictions qualify for ACCA enhancement, we have used a categorical approach, under which we look only to the statutory definitions of the prior offenses." *Shular v. United States*, 140 S. Ct. 779, 783 (2020) (internal quotation marks omitted). "If the state offense sweeps more

broadly, or punishes more conduct than the federal definition, the conviction does not qualify as a predicate offense." *United States v. Vanoy*, 957 F.3d 865, 867 (8th Cir. 2020). "Under this approach, we consider neither the particular facts underlying the prior convictions nor the label a State assigns to the crimes." *Shular*, 140 S. Ct. at 783 (cleaned up). Thus, "[t]he question for us is whether Minnesota's definition of [MDMA] sweeps more broadly than the one in the federal controlled-substance schedules." *United States v. Owen*, 51 F.4th 292, 295 (8th Cir. 2022) (per curiam).

Specifically, if Heard was convicted of a state drug offense that "punishes more conduct than the federal definition, the conviction does not qualify as a predicate offense." *Vanoy*, 957 F.3d at 867. "We have already concluded that a drug statute that criminalizes even one additional isomer does not qualify as a serious drug felony." *Owen*, 51 F.4th at 296 (internal quotation marks omitted).

Federal law prohibits "any material, compound, mixture, or preparation, which contains any quantity of the following hallucinogenic substances, or which contains any of its salts, isomers, and salts of isomers." 21 C.F.R. § 1308.11(d). The listed items include "3,4-methylenedioxymethamphetamine (MDMA)." *Id*. § 1308(d)(11). Federal regulation expressly limits the term isomer to "optical, position[al] and geometric isomers." *Id*. § 1308.11(d).

At the time of Heard's guilty plea, the Minnesota law criminalizing MDMA isomers differed from federal law. Minn. Stat. § 152.022, subd. 1(3) (2011), stated that "[a] person is guilty of [a] controlled substance crime in the second degree if . . . the person unlawfully sells one or more mixtures of a total weight of ten grams or more containing . . . [a] hallucinogen." Minnesota law defined a hallucinogen as "any hallucinogen listed in section 152.02, subdivision 2, clause (3), or Minnesota Rules, part 6800.4210, item C." Minn. Stat. § 152.01, subd. 5a (2011). Minnesota Rules, part 6800.4210 is a regulatory list of hallucinogens maintained by the

Minnesota Board of Pharmacy. Because the language of Minn. Stat. § 152.02, subd. 5a, penalizes substances defined as hallucinogens in "section 152.02, subdivision 2, clause (3), *or* Minnesota Rules, part 6800.4210, item C" (emphasis added), an isomer included in either clause is prohibited. As indicated by the use of the conjunction "or," placement on either list is sufficient to penalize a substance under Minnesota law. *See id*. If an isomer is prohibited by Minnesota Rules, part 6800.4210, item C, or Minn. Stat. 152.02, subd. 2(3), but not by federal law, the Minnesota law is broader than federal regulations.

The Minnesota Rule promulgated by the Board of Pharmacy matches the federal regulatory definition in 21 C.F.R. § 1308.11. The Minnesota Rules, part 6800.4210, item C prohibits "isomers" of MDMA "whether optical, positional, or geometric." Neither of the parties argue that this does not track with the federal regulatory definition. At the time of the offense conduct,[2] Minn. Stat. § 152.02, subd.

---

[2]It is critical to the disposition of this case to determine the correct version of the statute, because the statute was changed on July 1, 2011, to track federal law. *See* Minn. Stat. § 152.02, subd. 2(3) (July 1, 2011); 2011 Minn. Sess. Law Serv. Ch. 53 (H.F. 57) (West). We must look to the statute at the time of the prior conviction to determine whether it meets the criteria for a violent felony or serious drug offense. *McNeill v. United States*, 563 U.S. 816, 820 (2011). "The statute requires the court to determine whether a 'previous convictio[n]' was for a serious drug offense. The only way to answer this backward-looking question is to consult the law that applied at the time of that conviction." *Id.* (quoting 18 U.S.C. § 924(e)(1)).

At the time of Heard's conviction, July 21, 2011, *see* R. Doc. 109, at 9, the relevant statutory language prohibited, "Any material, compound, mixture or preparation which contains any quantity of the following hallucinogenic substances, their salts, isomers (whether optical, positional, or geometric), and salts of isomers . . . ." Minn. Stat. § 152.02, subd. 2(3) (July 1, 2011). However, the enacting legislation also read, "EFFECTIVE DATE. This section is effective July 1, 2011, and applies to crimes committed on or after that date." 2011 Minn. Sess. Law Serv. Ch. 53 (H.F. 57) (West). Heard's offense conduct took place on October 23 and 30, 2009.

2(3) (2009), penalized isomers of the listed hallucinogens, including MDMA, without reference to the type of isomers penalized. It read, in relevant part, "Any material, compound, mixture or preparation which contains any quantity of the following hallucinogenic substances, their salts, isomers and salts of isomers . . . ." *Id.* The government argues that the interpretation of "isomers" in Minn. Stat. § 152.02 should be influenced by the Minnesota Board of Pharmacy's decision to limit their definition of isomers to optical, positional, or geometric isomers in Minn. R. 6800.4210. Heard, in reply, argues that the common usage of the word "isomers" would include all isomers regardless of the specific chemical structure.

For the enhancement to apply, we would have to read "isomers" in Minnesota Rules, part 6800.4210, item C, as excluding certain isomers, namely, those excluded in the federal regulations. However, if we read "isomers" as being limited to optical, positional, and geometric isomers it would render superfluous the language of Minn. R. 6800.4210, "whether optical, positional, or geometric." A common sense reading of the statute suggests that Minn. R. 6800.4210 limits some isomers, while Minn. Stat. § 152.02, subd. 2(3) (2009), limits all isomers.

Our most recent case interpreting "isomers" confirms this understanding. *See Owen*, 51 F.4th at 295. We held in *Owen* that "[b]y specifically mentioning '*the . . . isomers* of cocaine,' the definition sweeps in any substance with 'the same chemical composition' as cocaine, even if it has a different 'structural form.'" *Owen*, 51 F.4th at 295 (quoting *Dictionary of Science and Technology* 1151 (1992)). The same is true

---

At that time, the relevant statute did not have the "optical, positional, or geometric" language in it that would have brought it within the scope of federal law. Because *McNeill* instructs us to look at the statute at the time of the conviction, and the legislation amending that statute tells us that it only applies to crimes committed on or after July 1, 2011, we apply the statute effective between August 1, 2009, and June 30, 2011.

here for Minnesota's definition of MDMA. This forecloses application of the ACCA enhancement, because "[w]e have already concluded that a drug statute that criminalizes even one additional isomer does not qualify as a 'serious drug felony.'" *Id*. at 296. The language used by Minnesota in its definition of MDMA is the same, reaching any "mixture" containing the "isomers" of the listed substances. Minn. Stat. § 152.02, subd. 2(3) (2009). Because Minn. Stat. § 152.02, subd. 2(3) (2009), potentially penalizes all isomers of MDMA, it is overbroad.

The government argues that if we find the statute to be overbroad, we should nonetheless conclude that ACCA sentencing is appropriate under the reasonable probability test. The reasonable probability test requires a party to "show a realistic probability that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Gonzalez v. Wilkinson*, 990 F.3d 654, 660 (8th Cir. 2021) (internal quotation marks omitted). However, the reasonable probability test applies only when a statute is ambiguous. *Id.* In this context, if the statute was determined to be ambiguous, then Heard would be required to show that there was a realistic probability that Minnesota would use this statute to criminalize isomers of MDMA beyond optical, positional, and geometric isomers.

*Owen* holds that the term "isomers," as used in the relevant statute, is not ambiguous. 51 F.4th at 296. When "[t]he realistic probability, . . . is evident from the language of the statute itself,. . . . [i]t is not our job to rewrite the statute."*Id.* (cleaned up). When a Minnesota statute penalized "isomers" of cocaine, we found it unambiguously overbroad. *Id.* ("The definition of cocaine, as we explain above, is unambiguously broad: it reaches '*the . . . isomers* of cocaine' and contains no limiting language." (alteration in original) (quoting Minn. Stat. § 152.01, subd. 3a)). We decline to apply the reasonable probability test, as "isomers" is unambiguous. *See id.*

### III. *Conclusion*

Accordingly, we affirm the judgement of the district court.

_____