# United States Court of Appeals
### For the Eighth Circuit
_____

No. 22-1036
_____

United States of America

*Plaintiff - Appellant*

v.

Patrick Lloyd Henry

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: October 19, 2022
Filed: June 7, 2023
[Unpublished]
_____

Before SMITH, Chief Judge, BENTON and SHEPHERD, Circuit Judges.
_____

PER CURIAM.

Patrick Henry was sentenced to 115 months' imprisonment for being a felon in possession of a firearm. Henry has three prior felony convictions under Minnesota law: one for domestic assault and two for selling methamphetamine. The government

appeals the district court's[1] determination that Henry's prior convictions were not "serious drug offenses" for purposes of the Armed Career Criminal Act (ACCA). 18 U.S.C. § 924(e)(1). The district court determined the ACCA did not apply because the Minnesota law at issue is overbroad. For the following reasons, we affirm.

The ACCA "sets a fifteen-year minimum sentence for anyone who possesses a firearm as a felon and has 'three previous convictions . . . for a violent felony or a serious drug offense.'"[2] *United States v. Owen*, 51 F.4th 292, 294 (8th Cir. 2022) (per curiam) (alteration in original) (quoting 18 U.S.C. § 924(e)(1)). "We review de novo whether a prior conviction constitutes a serious drug offense under [the ACCA]." *United States v. Bynum*, 669 F.3d 880, 885 (8th Cir. 2012).

To determine whether a prior conviction is a serious drug felony for purposes of the ACCA, "we look only at the legal definition of the crime, not the defendant's actual acts." *Owen*, 51 F.4th at 294 (cleaned up). "If the state's definition of the crime sweeps more broadly, or punishes more conduct than the federal definition, the conviction does not qualify as a predicate offense." *Id.* (internal quotation marks omitted).

The question presented is whether the word "isomers" as used by the Minnesota statute defining methamphetamine is overbroad compared to the federal definition. The statute at issue states:

> [U]nless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation which contains any quantity

---

[1]The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota.

[2]The parties do not dispute that Henry's domestic assault conviction qualifies as a violent felony.

of the following substances having a stimulant effect on the central nervous system: . . . methamphetamine, its salts, isomers, and salts of its isomers . . . [is a Schedule II controlled substance].

Minn. Stat. § 152.02, subd. 3(d)(2). Minnesota does not further define methamphetamine "isomers."

Federal law controls, among other things, methamphetamine "isomers." 21 U.S.C. § 812, sched. II(c), and sched. III(a)(3). "Isomer" is defined separately as an "optical isomer, except as used in schedule I(c) and schedule II(a)(4)." 21 U.S.C. § 802(14). Schedule I(c) and Schedule II(a)(4) do not refer to methamphetamine. So, federal law only controls the optical isomers of methamphetamine.

Both parties agree that federal law controls only the optical isomers of methamphetamine and that Minnesota law expressly indicates methamphetamine "isomers" are controlled with no mention of optical isomers or other qualifiers. However, the government maintains that Minnesota's use of "isomers" is ambiguous and that Minnesota's legislative intent indicates "isomers" includes "optical isomers." The government further argues that to the extent any ambiguity remains, the realistic probability test requires the same definition.

Thus, according to the government, if one assumes that the Minnesota definition of "isomers" only refers to "optical isomers," the Minnesota statute is not overbroad. If the statute is not overbroad, the district court erred in denying application of the ACCA. Otherwise, as the government concedes, if the Minnesota statute unambiguously refers to "all isomers," then it is overbroad, precluding application of the ACCA.

Minnesota's use of "isomers" for its definition of methamphetamine is not ambiguous. While Minnesota does not separately define methamphetamine "isomers,"

it does expressly control specific types of isomers for other controlled substances. For example, amphetamine isomers are expressly limited to "optical isomers." Minn. Stat. § 152.02, subd. 3(d)(1). Likewise, hallucinogen isomers include "optical, positional, or geometric [isomers]." *Id*. § 152.02, subd. 2(d). This indicates that when the Minnesota legislature intends to refer to "optical isomers," or any other specific type of isomer, it does so. Otherwise, the unqualified "isomer" refers to "all isomers." *See Owen*, 51 F.4th at 295 (analyzing Minnesota's definition of cocaine and concluding that "[b]y specifically mentioning the *isomers of cocaine*, the definition sweeps in any substance with the same chemical composition as cocaine, even if it has a different structural form" (emphasis added) (cleaned up)); *see also United States v. Heard*, 62 F.4th 1109, 1113 (8th Cir. 2023) ("The same is true here for Minnesota's definition of MDMA. This forecloses application of the ACCA enhancement . . . .").

"The sense of a word depends on how it is being used; only if more than one meaning applies within that context does ambiguity arise." *Bd. of Regents of Univ. of Minn. v. Royal Ins. Co. of Am.*, 517 N.W.2d 888, 892 (Minn. 1994). The government relies on this holding to state "[t]hat is precisely the situation in this case because the meaning of 'isomer' changes depending on its context." Appellant's Br. at 29. The different contexts the government identifies are the uses of "isomers" in federal law for different controlled substances, and the differing definitions of "isomers" provided by the Drug Enforcement Administration and an expert's affidavit.

Here, an ambiguity under Minnesota law arises only when a word has a different meaning when used in the *same* context. *See State v. Henderson*, 907 N.W.2d 623, 626 (Minn. 2018) ("The meaning of a word depends on how it is being used in the context of the statute. Only if more than one meaning is reasonable within that context, and as applied in the particular case, will we declare the statute to be ambiguous." (citing *Bd. of Regents*, 517 N.W.2d at 892)). Only one meaning is reasonable in the context of Minn. Stat. § 152.02, subd. 3(d)(2): "isomers" means "all

-4-

isomers." The fact that "isomers" may have a different meaning when applied to different controlled substances under federal law, or to different definitions outside the context of the Minnesota statute, does not matter to this case.

Accordingly, the Minnesota statute is not ambiguous. The government's reliance on legislative intent is misplaced. *See* Minn. Stat.§ 645.16 ("When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit."). As a result, the realistic probability test does not apply. *See Owen*, 51 F.4th at 296 (declining to use the realistic probability test because the Minnesota statute at issue, which included "isomers of cocaine" in its definition of cocaine, unambiguously meant that all isomers of cocaine were included within the definition of cocaine). Thus, the district court did not err in determining that Minnesota's law is overbroad compared to federal law. *Id.* ("[A] drug statute that criminalizes even one additional isomer does not qualify as a serious drug felony." (internal quotation marks omitted)).[3]

---

[3]We acknowledge an argument that the government made at oral argument. Specifically, the government argued that if "isomers" means "all isomers," then Minnesota's statute would include thousands of different substances under the definition of methamphetamine. One such substance, phentermine, is separately identified by Minnesota as a schedule IV controlled substance. *See* Minn. Stat. § 152.02, subd. 5(e)(9). Notably, Minnesota also controls the "isomers" of phentermine, without any further limitation. *See id.* § 152.02, subd. 5(e).

Thus, if the unqualified "isomers" means "all isomers," and "all isomers" means "any substance with the same chemical composition . . . even if it has a different structural form," *Owen*, 51 F.4th at 295 (internal quotation marks omitted), then methamphetamine is an isomer of phentermine, and phentermine is an isomer of methamphetamine. Likewise, they both have the same isomers. In other words, defining "isomers" as "all isomers" in this context would mean that methamphetamine or phentermine isomers are controlled as both schedule IV and schedule II substances under Minnesota law, unless specifically controlled elsewhere.

We affirm the district court's denial of the application of the ACCA.

_____

Such interpretation might render the Minnesota statute ambiguous, justifying the use of legislative intent to cure the ambiguity. *See* Minn. Stat. § 645.16. According to the government, analysis of legislative intent counsels in favor of finding uniformity between Minnesota and federal drug schedules, meaning the Minnesota statute at issue is not overbroad.

However, this argument is waived because it was raised for the first time at oral argument. *See United States v. Greene*, 513 F.3d 904, 906–07 (8th Cir. 2008) (finding government's argument waived when it was not raised until oral argument). We, therefore, decline to address it.